BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*To Be Admitted Pro Hac Vice*)
eryan@bffb.com
Patricia N. Syverson (203111)
psyverson@bffb.com
Lindsey M. Gomez-Gray (*To Be Admitted Pro Hac Vice*)
lgomez@bffb.com
2325 E. Camelback Road, #300
Phoenix, AZ  85016
Telephone:  (602) 274-1100
Facsimile:  (602) 274-1199

STEWART M. WELTMAN LLC
Stewart M. Weltman (*Admitted Pro Hac Vice*)
sweltman@weltmanlawfirm.com
53 W. Jackson Suite 364
Chicago, IL 60604
Telephone:  (312) 588-5033

GOLDMAN SCARLATO KARON & PENNY P.C.
Brian D. Penny (*Admitted Pro Hac Vice*)
penny@gskplaw.com
Douglas J. Bench, Jr.
bench@gskplaw.com
101 East Lancaster Ave., Suite 204
Wayne, Pennsylvania 19087
Telephone:  (484) 342-0700

*Additional Attorneys Appear on Signature Page*

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MYRON WEINTRAUB and NOAH BRADACH, On Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>PHARMAVITE, LLC, a California limited liability company,<br><br>Defendant. | Case No.:   2:14-cv-03218-GHK(AGRx)<br><br>**CONSOLIDATED CLASS ACTION COMPLAINT FOR:**<br><br>1. VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200 *et seq.*;<br>2. VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, Civil Code §1750 *et seq.*; and<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Myron Weintraub and Noah Bradach bring this action on behalf of themselves and all others similarly situated against Defendant Pharmavite, LLC, and states:

## NATURE OF ACTION

1.     Pharmavite manufactures, markets, sells and distributes Vitamin E dietary supplements under its brand name Nature Made.[1]  Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Pharmavite uniformly claims that its Vitamin E products will help maintain a healthy heart.  On each and every bottle of Vitamin E, Pharmavite represents that the Products "help[] maintain a healthy heart" (hereinafter "the heart health representation").  This is the only benefit representation made on the Products' front labels.   In truth, Pharmavite's Vitamin E products do not help maintain a healthy heart.

2.     Experts in the field recognize that the measure of whether a heart is healthy is that it is free from cardiovascular disease.  Thus, experts in the field view the test for whether a substance, such as Vitamin E supplements, provide any heart health benefits is whether the substance helps prevent cardiovascular disease ("CVD").[2]  As more fully set forth below, large scale randomized controlled clinical trials ("RCTs") have conclusively shown that Vitamin E supplements such as those sold by Defendant do not prevent CVD and thus the consensus in the scientific community is that Vitamin E supplements do not provide any heart health benefits

---

[1] (1) Natural Vitamin E 400 IU d-Alpha; (2) Vitamin E 400 IU dl Alpha; (3) Vitamin E 400 I.U. Water Solubilized; (4) Vitamin E 1000 IU dl Alpha; and (5) Vitamin E 200 IU dl Alpha (collectively "the Products" or "Vitamin E").

[2] For example, the American Heart Association defines cardiovascular health as the absence of disease.http://www.heart.org/idc/groups/heartpublic/@wcm/@sop/@smd/documents/downloadable/ucm_319831.pdf.   Similarly, the Columbia University Medical web site (http://www.cumc.columbia.edu/cbch/),   the   Mayo   Clinic   web   site (http://www.mayoclinic.org/cardiovascular-disease-rst/cardioheartclinic.html),   and University of Chicago (http://www.ucmc150.uchicago.edu/cardio/) web sites all define cardiovascular health in terms of the prevention of CVD.

and most certainly do not help maintain a healthy heart.

3.  By law, the FDA does not and cannot regulate the pre-market approval of health benefit statements about dietary supplements such as Defendant's Vitamin E products.  Instead, it is the manufacturer's responsibility to ensure that the statement "characterizes the documented mechanism by which a nutrient or dietary ingredient acts to maintain such structure or function…." and that the manufacturer "has substantiation that such statement is truthful and not misleading."  21 U.S.C. 343 (r).  As more fully set forth herein, the statement that Defendant's Vitamin E supplements "help[] maintain a healthy heart" does not have a "documented mechanism by which" it acts to provide this heart health benefit.  Pharmavite does not and cannot have substantiation for such a representation because the scientific evidence is that Vitamin E supplements do not help maintain a healthy heart.

4.  Further, even though the Pharmavite labels – in smaller print – on the back of the bottles – carry a required "disclaimer" that the Products are not "intended to diagnose, treat, cure or prevent any disease", whether reasonable consumers would interpret the disclaimer as negating the front of the label "help[] maintain a healthy heart" main message is a common question of fact.

5.  Large scale RCTs have demonstrated that Vitamin E supplements, like Pharmavite's Products, do not provide any cardiovascular or heart health benefits.  Thus, the sole "active" ingredient in the Products, Vitamin E, does not work as represented by Pharmavite in that it does not help maintain a healthy heart.  Pharmavite's heart health representation is false, misleading, and reasonably likely to deceive the public.

6.  That Vitamin E supplementation provides no cardiovascular or heart health benefits is widely recognized by major medical groups including the American Heart Association (AHA) and Mayo Clinic.  Likewise, a panel of experts

commissioned by the U.S. Preventive Services Task Force[3] has concluded that Vitamin E supplements have been proven ineffective in preventing cardiovascular disease or its associated outcomes including stroke, heart attack and mortality – the sole measure of heart health.

7.     Pharmavite has employed numerous media to convey its uniform, deceptive heart health representation to consumers, including magazines, newspapers, the internet, social media websites, and, importantly, on the front of the Vitamin E Products' packaging and labeling where it cannot be missed by consumers.

8.     As a result of Pharmavite's deceptive heart health representation, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that do not perform as advertised.

9.     Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased the Vitamin E Products, to halt the dissemination of this false, misleading and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products.  Based on violations of California state unfair competition laws and other similar state consumer fraud laws, Plaintiffs seek injunctive and monetary relief for consumers who purchased the Vitamin E Products.

**JURISDICTION AND VENUE**

10.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). Defendant has admitted its sales of Vitamin E bearing the "helps maintain a healthy heart" statement exceed $5,000,000.00.  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Pharmavite.

---

[3] The U.S. PSTF is a volunteer panel of national experts convened by the Agency for Healthcare Research and Quality.

11.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to the alleged claims occurred in this district and because Pharmavite:

- is headquartered in this district;

- is authorized to conduct business in this district and has intentionally availed itself of the laws and markets within this district through the promotion, marketing, distribution, and sale of its Products in this district; and

- does substantial business in this district

## PARTIES

12.     Plaintiff Myron Weintraub resides in New York, New York.  Between 2007 and 2012, Plaintiff Weintraub was exposed to and saw Pharmavite's heart health representation by reading the label of the Vitamin E 400 I.U. product.  Plaintiff Weintraub purchased Vitamin E 400 I.U. at a Costco in Nanuet, New York in reliance on Pharmavite's heart health representation.   The Vitamin E 400 I.U. Plaintiff Weintraub purchased did not and could not help maintain his heart health as represented because, as discussed herein, the vast weight of scientific evidence and the consensus in the scientific community is that Vitamin E supplements do not provide any heart health benefits.  As a result, Plaintiff Weintraub suffered injury in fact and lost money.  Had Plaintiff Weintraub known the truth about Pharmavite's misrepresentations and omissions, he would not have purchased Vitamin E 400 I.U.

13.     Plaintiff Noah Bradach resides in San Francisco, California.  In July 2013, Plaintiff Bradach was exposed to and saw Pharmavite's heart health representation by reading the label of the Vitamin E 400 I.U. product.   Plaintiff Bradach purchased Vitamin E 400 I.U. at a Walgreens in San Francisco, California in reliance on Pharmavite's heart health representation.   He paid approximately $15.00 for one bottle of Vitamin E 400 I.U.  The Vitamin E 400 I.U. Plaintiff Bradach purchased did not and could not help maintain his heart health as represented because,

1   as discussed herein, the vast weight of scientific evidence and the consensus in the

2   scientific community is that Vitamin E supplements do not provide any heart health

3   benefits.  As a result, Plaintiff Bradach suffered injury in fact and lost money.  Had

4   Plaintiff Bradach known the truth about Pharmavite's misrepresentations and

5   omissions, he would not have purchased Vitamin E 400 I.U.

6       14.    Defendant Pharmavite, LLC, is a limited liability company organized

7   and existing under the laws of the State of California.  Pharmavite's headquarters is

8   at 8510 Balboa Boulevard, Mission Hills, California 91325.  From its headquarters

9   in Mission Hills, California, Pharmavite manufactures, distributes, markets and sells

10  the Vitamin E products to consumers nationwide and created the deceptive heart

11  health representation which it caused to be disseminated to consumers nationwide.

12                          **FACTUAL ALLEGATIONS**

13      15.    Pharmavite manufactures, distributes, markets and sells nationwide

14  Vitamin E dietary supplements under its brand name "Nature Made".  They are : (1)

15  Natural Vitamin E 400 IU d-Alpha; (2) Vitamin E 400 IU dl Alpha; (3) Vitamin E

16  400 IU Water Solubilized; (4) Vitamin E 1000 IU dl Alpha; and  (5) Vitamin E 200

17  IU dl Alpha.

18      16.    Pharmavite's Vitamin E products are sold in virtually every major food,

19  drug, and mass retail outlet in the country.  The Vitamin E products are available in

20  60, 100, 180 and 300 count bottles retailing for between $13 and $30.  The following

21  are screen shots of the Products:

22

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28



17.     Throughout the relevant time period, Pharmavite has consistently conveyed the message to consumers throughout the United States that its Vitamin E products "help[] maintain a healthy heart," simply by taking the recommended daily dosage. They do not. Pharmavite's heart health representation is false, misleading and deceptive.

18.     Pharmavite represents that the claimed heart health benefit is achieved from the Products' only purported active ingredient - Vitamin E. Vitamin E is a fat-soluble nutrient found in a variety of foods including, nuts, seeds and green leafy vegetables. In the 1980s and 1990s, because Vitamin E was found to slow down the oxidation of LDL cholesterol in a test tube setting (e.g. *in vitro* testing) it, along with certain other vitamins such as C and D, was coined an antioxidant. That Vitamin E carries an "antioxidant" label does not, however, mean that it provides any health benefits. In fact, there is little known about how Vitamin E and other purported antioxidants actually work in the human body.

19.     "Basic science" studies (e.g. *in vitro*, *in vivo*, and animal studies) conducted decades ago have led to hypotheses, yet to be proven in humans, that Vitamin E's purported antioxidant properties might provide a whole host of health benefits. It is recognized by experts in the field, however, that such "basic science" studies only create hypotheses that need to be tested and do not constitute scientific

substantiation that Vitamin E provides *any* of these health benefits. Basic science studies do not constitute proof that a substance works in humans.

20.    The popularity of Vitamin E and sales of the supplement got an additional boost when, in the early 1990s, "observational studies" reported a perceived relationship between the intake of Vitamin E and the prevention of cardiovascular disease.  As a result of those studies – and the commonly held perception at the time that Vitamin E supplements were safe – there was a rapid increase in use of Vitamin E supplements.

21.    However, like basic science studies, observational studies (also known as "epidemiological or population studies") are not considered by experts in the field to constitute adequate proof of cause and effect in human beings.  Like basic science studies, observational studies can only create hypotheses and do not constitute scientific substantiation that Vitamin E provides any heart health benefits.  Among other things, observational studies cannot control for confounding factors such as whether the subjects taking Vitamin E were leading healthier lifestyles.  As a result, as with basic science studies, observational studies are deemed by experts in the field to provide hypotheses about potential effects which then must be tested through RCTs.

22.    The only accepted form of scientific evidence recognized by experts in the field for determining any heart or other human health benefit provided by a substance such as Vitamin E is through RCTs.

23.    Since the mid–1990s, Vitamin E has been the subject of numerous, large scale–RCTs, making it one of the most tested substances ever.  To date, there have been more than 25 large long–term RCTs or meta–analyses published, involving collectively over 200,000 subjects.

24.    The theory/hypothesis that Vitamin E supplements may provide heart health benefits has been discredited fully by this scientific research.  Instead, the

conclusions from the large randomized clinical trials have been consistent that Vitamin E supplementation provides no heart health benefits, because these studies demonstrated that Vitamin E supplements were no better than placebo in affecting the markers for heart health, such as reducing the risk for cardiovascular disease and its associated outcomes including heart attacks, stroke, or mortality.  In other words, numerous large scale RCT's, making Vitamin E supplements one of the most studied substances ever have established that Vitamin E supplements **do not "help maintain a healthy heart."**

25.   Representative examples of studies concluding that Vitamin E supplementation does not provide heart health benefits include: Sesso, H.D., et al., *Vitamins E and C in the Prevention of Cardiovascular Disease in Men, The Physicians' Health Study II Randomized Controlled Trial*, 300(18) JAMA 2123–33 (Nov. 2008) (concluding that long term Vitamin E supplementation does not prevent cardiovascular events in healthy middle–aged and older men and concluding with the recommendation that persons not take Vitamin E supplements); Lee, I–Min, et al., *Vitamin E in the Primary Prevention of Cardiovascular Disease and Cancer. The Women's Health Study: A Randomized Controlled Trial*, 294(1) JAMA 56–65 (July 2005) (concluding that Vitamin E supplementation provided no heart health benefits in healthy women and recommending that women not take Vitamin E supplements); Lonn, E., et al., *Effects of Long–Term Vitamin E Supplementation On Cardiovascular Events And Cancer: A Randomized Controlled Trial*, 293(11) JAMA 1338–47 (Mar. 2005) (concluding that long-term Vitamin E supplementation does not prevent cardiovascular events, and in fact, may increase the risk for heart failure and recommending not taking Vitamin E supplements); Arnold, J., et al., *Prevention of Heart Failure in Patients in the Heart Outcomes Prevention Evaluation (HOPE) Study*, 107 Circulation J. 1284–290 (Feb. 2003) (concluding that  participants taking 400 IU/day of Vitamin E experienced no fewer cardiovascular events or

hospitalizations for heart failure or chest pain than participants taking a placebo); Chae C., Albert C., Moorthy, MV, Lee I., Buring, J., *Vitamin E Supplementation and the Risk of Heart Failure in Women*, Circulation: Heart Failure, 5:176 Journal of the American Heart Association 182 (2012) (concluding that "at the present time, the cumulative evidence to date does not support the use of Vitamin E supplementation to reduce the risk of cardiovascular diseases").[4]   These large scale and long term RCTs conclusively demonstrate that Vitamin E supplementation provides no heart health benefits.  That the results of these large scale/long term studies showed that Vitamin E supplements were no better than placebo demonstrate Defendant's heart health representations are false, misleading or deceptive.

26.     Several meta-analyses – which follow accepted statistical protocols to combine the results of multiple RCTs – have likewise concluded that Vitamin E supplements do not provide heart health benefits.  Additionally, those meta-analyses indicate that people who take a dosage of 400IUs or more of Vitamin E supplements are more likely to die than those taking a placebo.  *See* Miller ER 3rd, Pastor–Barriuso R, Dalal D et al., *Metaanalysis: High–Dosage Vitamin E Supplementation May increase all–cause mortality*, Ann Intern Med 2005; 142(1):37–46; Bjelakovic G, Nikolova D, Gluud LL, Simonetti RG, Gluud C., *Mortality in randomized trials of antioxidant for primary and secondary prevention: systematic review and meta–analysis*, JAMA Feb 28 2007; 297(8):842–857.

27.     These large scale and long term RCTs, while addressing whether Vitamin E supplements prevented CVD, conclusively demonstrate that Vitamin E supplementation provides no heart health benefits.  Because of their large scope and

---

[4] Consistent with the forgoing allegations regarding the hypotheses presented by basic science and observational studies, each of these studies, in prefatory statements, noted the results of the basic science or observational studies as background for why they were conducting their particular RCT.  Ultimately, the RCTs did not support the results of the observational studies.

long term nature, it is recognized by experts in the field that if Vitamin E supplementation were to provide any heart health benefits at all, it would have shown up in the results of these studies – e.g. that long term use of Vitamin E supplements would have prevented CVD in the Vitamin E supplement group more than the placebo group.

28.     For example, Plaintiffs' expert Edgar R. Miller, Ph.D. M.D., a Professor of Medicine at Johns Hopkins University with a joint appointment at the Johns Hopkins Bloomberg School of Public Health, has opined that "numerous large randomized controlled clinical trials of vitamin E supplements have failed to show a beneficial effect in the prevention of cardiovascular diseases (primary prevention trials []) or the secondary prevention trials (prevention of subsequent disease in those with established heart diseases []).  Given the lack of benefit in heart health in these two populations and the increased risk of mortality associated with high dose vitamin E supplementation (>400 UI) reported in two meta-analyses of all trials combined, it is my opinion that the claims made, i.e. that vitamin E supplementation 'helps maintain a healthy heart' is false."  *See* Exhibit A, Class Action Expert Report of Dr. Edgar R. Miller, Ph.D., M.D., at ¶19, *Bohn v. Pharmavite, LLC*, Case No. 2:11-cv-10430-GHK-AGR (C.D. Cal.), attached hereto.

29.     In light of the consistent scientific evidence, well-regarded science organizations also have uniformly stated that Vitamin E supplementation does not provide any cardiovascular or heart health benefits.  The American Heart Association has released science advisories, including one in 2004, concluding that "scientific data do not justify the use of antioxidant vitamin supplements for CVD [cardiovascular disease] risk reduction."[5]  In reaching its conclusion based upon review of the RCTs, the AHA also recognized that the "positive findings from

---

[5] American Heart Association Science Advisory on Antioxidant Vitamin Supplements and Cardiovascular Disease *available at* http://circ.ahajournals.org/content/110/5/637.full.

observational studies with regard to vitamin E supplementation and lower rates of CVD may be a reflection of the generally healthy lifestyles and dietary intakes of supplement users" rather than any true causal effect.  *Id.*  Consequently, the AHA stated that it did not recommend people take Vitamin E supplements.

30.    Mayo Clinic researchers reached the same conclusion upon evaluating the history of studies of Vitamin E supplements: "The bottom line is that even though initial laboratory studies, animal studies and population research into the health benefits of vitamin E looked promising, the clinical trial findings — which provide the best form of evidence — didn't bear that out. Instead, they uncovered health risks that make it unwise to take separate vitamin E supplements."[6]

31.    Despite the overwhelming evidence the Products do not help maintain a healthy heart, each and every Product package and label repeatedly emphasizes that the Products "help[] maintain a healthy heart."  Each and every consumer who purchases these Products is exposed to this deceptive heart health representation, which appears prominently and conspicuously on the front and back of each bottle as follows:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

_____

[6] Mayo Clinic Medical Edge Newspaper Column, *Possible Risks Associated with Taking Vitamin E Supplements*, March 18, 2011 *available at* http://www.mayoclinic.org/medical–edge–newspaper–2011/mar–18a.html.

Front                                            Back

     

***The Impact of Pharmavite's Wrongful Conduct***

32.    Despite the scientific evidence that Vitamin E supplementation does not help maintain heart health, Pharmavite continues to unequivocally convey through its advertising and labeling one uniform message:  its Vitamin E products "help[] maintain a healthy heart."

33.    As the manufacturer and distributor of the Vitamin E products, Pharmavite possesses specialized knowledge regarding the content and effect of the ingredients contained in its Products and is in a superior position to learn of the effects – and has learned of the effects – its Products have on consumers.

34.    Plaintiffs and Class members have been and will continue to be deceived or misled by Pharmavite's deceptive heart health representation.  Plaintiffs purchased and consumed the Vitamin E Products during the Class period and in doing so, read and considered the Products' labels and based their decision to buy the Products on the heart health representation. Pharmavite's heart health representation was a material factor in influencing Plaintiffs' decision to purchase and consume the

Products.  Plaintiffs would not have purchased the Products had they known that Pharmavite's heart health representation was false and misleading and that competent and reliable scientific evidence demonstrates that Vitamin E does not help maintain heart health.

35.    As a result, Plaintiffs and the Class members have been damaged in their purchases of these Products and have been deceived into purchasing Products that they believed, based on Pharmavite's representations, helped maintain heart health, when, in fact, they do not.

36.    Pharmavite, by contrast, reaped enormous profits from its false marketing and sale of these Products.

## CLASS DEFINITION AND ALLEGATIONS

37.    Plaintiffs Weintraub and Bradach bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Pharmavite for violations of California consumer protection laws:

> **<u>Nationwide Class Action</u>**
> All consumers who, within the applicable statutes of limitations, purchased Pharmavite's Vitamin E Products in the United States.
>
> Excluded from the Class are Pharmavite and its officers, directors and employees and those who purchased Nature Made Vitamin E dietary supplements for the purpose of resale.

38.    Plaintiffs Weintraub and Bradach bring this action on behalf of themselves and all other similarly situated Class members pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Pharmavite for violations of California consumer protection laws:

**Multi-State Class Action**
All consumers who, within the applicable statutes of limitations, purchased Pharmavite's Vitamin E Products in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and/or Washington.

Excluded from the Class are Pharmavite and its officers, directors and employees and those who purchased Nature Made Vitamin E dietary supplements for the purpose of resale.

39.   In the alternative, Plaintiff Bradach brings this action on behalf of himself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Pharmavite for violations of California consumer protection laws:

**California-Only Class Action**
All consumers who, within the applicable statute of limitations period, purchased Pharmavite's Vitamin E products in California.

Excluded from this Class are Pharmavite and its officers, directors and employees and those who purchased Nature Made Vitamin E dietary supplements for the purpose of resale.

40.   In the alternative, Plaintiff Weintraub brings this action on behalf of himself and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Pharmavite for violations of New York consumer protection laws:

**New York-Only Class Action**
All consumers who, within the applicable statute of limitations period, purchased Pharmavite's Vitamin E products in New York.

Excluded from this Class are Pharmavite and its officers, directors and employees and those who purchased Nature

Made Vitamin E dietary supplements for the purpose of resale.

41. ***Numerosity.***  The members of the Class are so numerous that joinder of all members of the Class is impracticable.  Plaintiffs are informed and believe that the proposed Class(es) contain thousands of purchasers of the Vitamin E products who have been damaged by Pharmavite's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiffs.

42. ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

(a)    whether Pharmavite's heart health representations are misleading, or objectively reasonably likely to deceive;

(b)    whether Pharmavite's alleged conduct violates public policy;

(c)    whether the alleged conduct constitutes violations of the laws asserted;

(d)    whether Pharmavite engaged in false or misleading advertising;

(e)    whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

(f)    whether Plaintiffs and Class members are entitled to other appropriate remedies, including damages, corrective advertising and injunctive relief.

43. ***Typicality***.  Plaintiffs' claims are typical of the claims of the members of the Class because, *inter alia*, all Class members were injured through the uniform misconduct described above and were subject to Pharmavite's deceptive heart health representation that accompanied each and every bottle of Vitamin E.  Plaintiffs are also advancing the same claims and legal theories on behalf of themselves and all members of the Class.  Plaintiffs have standing to advance these claims because Pharmavite is headquartered in California; created and disseminated the deceptive

heart health representation nationwide from its California headquarters; and manufactured, distributed, marketed, and/or sold its Vitamin E products from its California headquarters.

44.   ***Adequacy of Representation***.   Plaintiffs will fairly and adequately protect the interests of the members of the Class.   Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs have no adverse or antagonistic interests to those of the Class.

45.   ***Superiority***.   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.   The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Pharmavite.   It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not.   Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.   By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

46.   Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Pharmavite from engaging in the acts described, and requiring Pharmavite to provide full restitution to Plaintiffs and Class members.

47.     Unless a Class is certified, Pharmavite will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.  Unless a Class-wide injunction is issued, Pharmavite will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

48.     Pharmavite has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Business & Professions Code §17200, *et seq.***
**(Applicable to the Nationwide, Multi-State Class, or Alternatively, to the California-Only Class)**

49.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

50.     Plaintiff Bradach brings this claim individually and on behalf of the California-only Class.  Plaintiffs Weintraub and Bradach bring this claim individually and on behalf of the Nationwide and Multi-State Class.

51.     As alleged herein, Plaintiffs have suffered injury in fact and lost money or property as a result of Pharmavite's conduct because they purchased the Products in reliance on Pharmavite's heart health representation, but did not receive a Product that maintains heart health.

52.     The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Pharmavite committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1711, 1770 and Business & Professions Code §§17200,

- 18 -

*et seq.*, 17500, *et seq.*

53.    Plaintiffs and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

54.    Pharmavite's actions also constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Pharmavite engaged in false advertising, misrepresented and omitted material facts regarding its Vitamin E products, and thereby offended an established public policy, and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55.    As stated in this Complaint, Plaintiffs allege violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Pharmavite's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct constitutes violations of the unfair prong of Business & Professions Code §17200, *et seq.*

56.    There were reasonably available alternatives to further Pharmavite's legitimate business interests, other than the conduct described herein.

57.    Business & Professions Code §17200, *et seq.*, also prohibits any "fraudulent business act or practice."

58.    Pharmavite's actions, claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq.*

59.    Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

60.    As a result of its deception, Pharmavite has been able to reap unjust revenue and profit.

61.     Unless restrained and enjoined, Pharmavite will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

62.     Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, seek restitution of all money obtained from Plaintiffs and the members of the Class as a result of unfair competition, an injunction prohibiting Pharmavite from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

### COUNT II
### Violations of the Consumers Legal Remedies Act –Civil Code §1750 *et seq.*
### (Applicable to the Nationwide, Multi-State Class, or Alternatively, to the California-Only Class)

63.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

64.     Plaintiff Bradach brings this claim individually and on behalf of the California-only Class.   Plaintiffs Weintraub and Bradach bring this claim individually and on behalf of the Nationwide and Multi-State Class.

65.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").   Plaintiffs are "consumer[s]" as defined by California Civil Code §1761(d).  Pharmavite's Vitamin E products are "goods" within the meaning of the Act.

66.     Pharmavite violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the Vitamin E products:

(5)     Representing that [the Vitamin E products have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

*        *        *

(7)     Representing that [the Vitamin E products are] of a particular standard,

- 20 -

quality or grade . . . if [they are] of another.

\*       \*       \*

(9)     Advertising goods . . . with intent not to sell them as advertised.

\*       \*       \*

(16)    Representing that [the Vitamin E products have] been supplied in accordance with a previous representation when [they have] not.

67.     Pharmavite violated the Act by representing and failing to disclose material facts on the Products' labels and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts it was obligated to disclose.

68.     Pursuant to California Civil Code §1782(d), Plaintiffs and the Class seek a Court order enjoining the above-described wrongful acts and practices of Pharmavite and for restitution and disgorgement.

69.     Pursuant to §1782 of the Act, by letters dated January 27, 2014, and August 12, 2014 Plaintiffs notified Pharmavite in writing by certified mail of the particular violations of §1770 of the Act and demanded that Pharmavite rectify the problems associated with the actions detailed above and give notice to all affected consumers of Pharmavite's intent to so act.

70.     Pharmavite failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Plaintiffs further seek actual, punitive and statutory damages, as appropriate.

71.     Pharmavite's conduct is fraudulent, wanton and malicious.

/ / /

/ / /

/ / /

/ / /

- 21 -

**COUNT III**
**Violations of the New York General Business Law § 349**
**(Applicable to the New York-Only Class)**

72.    Plaintiff Weintraub repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

73.    Plaintiff Weintraub brings this claim individually and on behalf of the New York-only Class.

74.    Pharmavite's actions alleged herein constitute unlawful, unfair, and deceptive business practices.  Those actions include misrepresenting that Nature Made Vitamin E "helps maintain a healthy heart," leading consumers to incorrectly believe Nature Made Vitamin E would reduce their risk of cardiovascular disease or otherwise maintain a healthy heart.

75.    Plaintiff Weintraub is not challenging any statement on Pharmavite's labels required by the FDA.

76.    Pharmavite's conduct constitutes acts, uses and/or employment by Pharmavite or its agents or employees of deception, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations and/or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of goods in violation of Section 349 of New York's General Business Law.

77.    Pharmavite's deceptive conduct was generally directed at the consuming public.

78.    Pharmavite's unfair and deceptive trade acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiff and other members of the New York-only Class.

/ / /

/ / /

79.    Pharmavite's violations of Section 349 of New York's General Business Law have damaged Plaintiff and other New York-only Class members, and threaten additional injury if the violations continue.

80.    Pharmavite's deceptive conduct has caused harm to New York-only Class members in that they purchased Nature Made Vitamin E when they otherwise would not have or paid more for Nature Made Vitamin E than they otherwise would have, absent Pharmavite's deceptive conduct.

81.    Plaintiff Weintraub, on his own behalf and on behalf of the New York-only Class, seeks damages, injunctive relief, including an order enjoining Pharmavite's Section 349 violations alleged herein, and court costs and attorneys' fees, pursuant to NY Gen. Bus. Law § 349.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.    Certifying the Class(es) as requested herein;

B.    Awarding Plaintiffs and the proposed Class members damages;

C.    Awarding restitution and disgorgement of Pharmavite's revenues to Plaintiffs and the proposed Class members;

D.    Awarding injunctive relief as permitted by law or equity, including enjoining Pharmavite from continuing the unlawful practices as set forth herein;

E.    Awarding statutory and punitive damages, as appropriate;

F.    Ordering Pharmavite to engage in a corrective advertising campaign;

G.    Awarding attorneys' fees and costs; and

H.    Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of their claims by jury to the extent authorized by law.

Dated: October 10, 2014          BONNETT, FAIRBOURN, FRIEDMAN
                                      & BALINT, P.C.


                                  /s/ Patricia N. Syverson
                                 Patricia N. Syverson (203111)
                                 2325 E. Camelback Road, Suite 300
                                 Phoenix, AZ 85016
                                 psyverson@bffb.com
                                 Telephone:  (602) 274-1100

                                 BONNETT, FAIRBOURN, FRIEDMAN
                                 & BALINT, P.C.
                                 Manfred P. Muecke (222893)
                                 600 W. Broadway, Suite 900
                                 San Diego, California 92101
                                 mmuecke@bffb.com

                                 STEWART M. WELTMAN, LLC
                                 Stewart M. Weltman (*Admitted Pro Hac Vice*)
                                 53 W. Jackson Suite 364
                                 Chicago, Illinois 60604
                                 sweltman@weltmanlawfirm.com
                                 Telephone:  (312) 588-5033
                                 (Of Counsel Levin Fishbein Sedran & Berman)

                                 ABTAHI THIGPEN LLP
                                 Jordanna Thigpen (232642)
                                 jthigpen@abtahilaw.com
                                 7772 Santa Monica Blvd
                                 West Hollywood, CA  90046
                                 Tel 213-863-0100
                                 Fax 213-863-0101

                                 ABTAHI THIGPEN LLP
                                 Ali Abtahi (224688)
                                 aabtahi@abtahilaw.com
                                 1012 Torney Avenue
                                 San Francisco, CA  94129
                                 Tel 415-639-9800
                                 Fax 415-639-9801

                                 NYE, PEABODY, STIRLING, HALE & MILLER,
                                 LLP
                                 Jonathan D. Miller (SBN 220848)
                                 jonathan@nps-law.com
                                 Alison M. Bernal (SBN 264629)
                                 alison@nps.com
                                 33 West Mission Street, Suite 201
                                 Santa Barbara, California 93101
                                 Telephone:  (805) 963-2345
                                 Facsimile:  (805) 563-5385

GOLDMAN SCARLATO KARON & PENNY P.C.
Brian D. Penny (*Admitted Pro Hac Vice*)
penny@gskplaw.com
Douglas J. Bench, Jr.
bench@gskplaw.com
101 East Lancaster Ave., Suite 204
Wayne, Pennsylvania 19087
Telephone:  (484) 342-0700

ZAREMBA BROWNELL & BROWN, PLLC
John Zaremba (*Admitted Pro Hac Vice*)
jzaremba@zbblaw.com
Robert Corbett
rcorbett@zbblaw.com
40 Wall Street, 27th Floor
New York, New York 10005
Telephone:  (212) 400-7224

LEVIN FISHBEIN SEDRAN & BERMAN
Howard J. Sedran
510 Walnut Street
Philadelphia, Pennsylvania 19106
hsedran@lfsblaw.com
Telephone: (215) 592-1500

Attorneys for Plaintiffs
*NOAH BRADACH and MYRON WEINTRAUB, On Behalf of Themselves and All Others Similarly Situated*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 10, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic mail notice list

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 10, 2014.

*/s/Patricia N. Syverson*
Patricia N. Syverson (203111)
BONNETT FAIRBOURN FRIEDMAN &
BALINT
2325 E Camelback Road, Ste. 300
Phoenix, AZ 85016
(602) 274-1100