E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | | Date | July 6, 2016 |
|---|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | | |

| **Presiding: The Honorable** | **GEORGE H. KING, U.S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:** **(In Chambers) Order re:** Renewed Motion for Class Certification [Dkt. 181]

This matter is before us on Plaintiffs Noah Bradach ("Bradach") and Laura Corbett's ("Corbett")[1] above-captioned Motion ("Motion"). [Dkt. 181.] We have considered the papers filed in support of and in opposition to this Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

**I.   Background**

Defendant Pharmavite LLC ("Defendant" or "Pharmavite") manufactures and distributes various dietary supplements under the brand name "Nature Made," including vitamin E supplements produced in multiple sizes and doses. (Third Consolidated Amended Class Action Complaint ("TAC") ¶¶ 1, 14-15.) Nearly every major food, drug, and mass retail store in the country sells these vitamin E supplements. (*Id.* ¶ 15.) The front label of each bottle of the supplements bears the statement "Helps Maintain a Healthy Heart." (*Id.* ¶ 16.) The back label makes this statement, albeit less conspicuously, and also notes "[t]hese statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease." (*Id.* ¶¶ 4, 30, fig. "Back.") Plaintiffs allege that they viewed "Helps Maintain a Healthy Heart" on Pharmavite's vitamin E supplements and purchased at least one bottle of the supplements in reliance on this statement. (*Id.* ¶ 12.) The operative TAC brings the following two claims rooted in the alleged falsity of the "Helps Maintain a Healthy Heart" statement: (1) violation of California's unfair competition law ("UCL"), and (2) violation of California's Consumer Legal Remedies Act ("CLRA").

Plaintiffs now seek to certify a class for these claims. Plaintiffs request that we appoint Bradach as class representative and specifically state that they are "not presently moving to have Laura Corbett

---

[1] Bradach and Corbett will be collectively referred to as "Plaintiffs."

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

jointly appointed class representative." (Mot. at 1 n.1.) They also seek appointment of the law firms Bonnett, Fairbourn, Friedman & Balint, P.C.; Boodell & Domanskis, LLC; and Goldman Scarlato & Penny P.C. as Class Counsel. (*Id.* at 1.)

**II.     Legal Standard**

A motion for class certification is governed by Federal Rule of Civil Procedure 23, and the party seeking certification "bears the burden of demonstrating that [he] has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Bradach must establish that the following Rule 23(a) prerequisites are met for the proposed class:

1.   the class is so numerous that joinder of all members is impracticable;

2.   there are questions of law or fact common to the class;

3.   the claims or defenses of the representative party are typical of the claims or defenses of the class; and

4.   the representative party will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)-(4). Though not specifically mentioned in Rule 23(a), ascertainability is also a threshold prerequisite to class certification. *See Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159, 163 (C.D. Cal. 2002). Because Bradach seeks to certify a Rule 23(b)(3) class, he must additionally show predominance and superiority.

**III.    Analysis**

   **A.     Preemption**

As an initial matter, Pharmavite argues that we should deny certification because Plaintiffs' claims—as phrased in the Class Certification Motion—are preempted. (Opp'n at 5.) This argument closely matches the preemption argument already resolved in Pharmavite's Motion for Judgment on the Pleadings. [*See* Dkt. 170.] We reject this argument for the reasons set forth in our December 22, 2015 Order addressing Pharmavite's Motion for Judgment on the Pleadings. [*See id.*]

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

**B.     Validity of Bradach's Claims**

As Pharmavite notes, Bradach's testimony reveals problems with the viability of his personal claims.  The TAC states that "Bradach was exposed to and saw Pharmavite's heart health representation by reading the label of" Pharmavite's vitamin E product, and that he bought the vitamin E product "in reliance on Pharmavite's heart health representation."  (TAC ¶ 12.1.)  "Had [] Bradach known the truth about Pharmavite's misrepresentations and omissions, he would not have purchased" the product.  (*Id.*) In his deposition, Bradach elaborated on this purchase decision, explaining that he thought that Pharmavite's vitamin E supplements would "help maintain [his] healthy heart."  (Markowitz Decl., Ex. 15 at 103:12-15 ("Q: What exactly did you think that the Nature Made Vitamin E was going to do for you?  A: I thought it was going to help maintain my healthy heart at the time.").)  However, Bradach clarified that, to him, this phrase meant "preventing heart disease."  (*Id.* at 104:18-25 ("A [Bradach]: I believe – I believe that it would – it would help maintain my healthy heart – Q: That to you –  A: – that I believe that I have.  Q: And to that – That, to you, means preventing heart disease, right?  A: It does.").) In his responses to Pharmavite's interrogatories, Bradach stated that the concern that he intended Pharmavite's vitamin E supplements to address was "to keep his heart healthy, which to him meant keeping his heart free from heart disease."[2]  (*Id.*, Ex. 26 at 13.)

Pharmavite contends that Bradach's testimony shows that he has no valid claims.  However, the exact contours of Pharmavite's argument to this effect are unclear.  To the extent Pharmavite suggests that Bradach lacks Article III standing to bring his UCL and CLRA claims against Pharmavite, we disagree.  Pharmavite has confused Article III standing with the validity of the claims.

To establish constitutional standing, a plaintiff must show (1) he suffered injury in fact, (2) there is a "causal connection between the injury and the conduct complained of," i.e., the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Bradach has satisfied these elements as (1) he suffered injury by purchasing a product he would not have purchased had he known the truth of the "Helps Maintain a Healthy Heart" statement; (2) the injury is fairly traceable to the alleged falsity of "Helps Maintain a Healthy Heart"; and (3) the injury will be redressed by a favorable decision for Bradach because he will receive restitution for his purchase.  Pharmavite

---

[2] Pharmavite's interrogatory asked, "Identify all health concerns that You intended the Nature Made® Vitamin E supplements to address, including the specific location on Your body of any concern, the length of time of the concern, and whether or not You have ever sought any medical treatment related to the health concern."  (Markowitz Decl., Ex. 26 at 13.)  Bradach responded that "his concern was to keep his heart healthy, which to him meant keeping his heart free from heart disease," and that "[i]n this regard, Plaintiff does not recall reading any general disclaimer on the label about the product not being intended to prevent, treat, or cure disease."  (*Id.*)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

itself acknowledges the existence of such standing. (*See* Opp'n at 7 (noting that Bradach bought Pharmavite's product "because he believed ['Helps Maintain a Healthy Heart'] means 'prevents heart disease,'" and that "[t]his is the only basis for which he personally has standing to assert any claims").)

However, Pharmavite is correct that Bradach's claims are preempted. Bradach's deposition statements reveal that his alleged injury—his purchase of Pharmavite's vitamin E supplements in reliance on "Helps Maintain a Healthy Heart"—is based on his interpretation of "Helps Maintain a Healthy Heart" as meaning "prevent[s] heart disease." (*See* Markowitz Decl., Ex. 15 at 104:18-25.) In other words, Bradach is asserting a false disease claim, and as explained in our December 22, 2015 Order addressing Pharmavite's Motion for Judgment on the Pleadings, the Nutrition Labeling and Education Act expressly preempts claims based on a false disease claim characterization of "Helps Maintain a Healthy Heart." [*See* Dkt. 170.] Thus, Bradach's claims are preempted as a matter of law.

Moreover, to maintain non-preempted claims, the proposed class must proceed on a theory that "Helps Maintain a Healthy Heart" is false for structure/function reasons—i.e., that the statement is false because the supplements do not help the structure or function of the heart. As explained, Bradach does not assert a structure/function claim. Thus, Bradach is not and cannot be a member of the proposed class.

Bradach argues that Pharmavite "confuses his personal interpretations of [Pharmavite's] label and the reasons for his purchase with the nature of the *legal* claim he brings in this case." (Reply at 7.) This argument does not address the preemption issues described above. As both Bradach and the class must advance non-preempted false structure/function claims for such claims to survive, each class member's interpretation of "Helps Maintain a Healthy Heart"—including Bradach's—matters in determining the viability of his or her claims.

Bradach next argues that Pharmavite "mischaracterizes [his] testimony." (*Id.*) "Contrary to [Pharmavite's] argument that he believed vitamin E supplements would prevent heart disease, [Bradach] testified that he believed Defendant's vitamin E supplements would 'help maintain [his] healthy heart[,]' which he understood to mean that it would help him be 'free of heart disease.'" (*Id.*) "It therefore cannot be denied that [Bradach] relied upon [Pharmavite's] false structure/function ['Helps Maintain a Healthy Heart'] representation in purchasing [Pharmavite's] product." (*Id.* at 7-8.) This argument is also unpersuasive. First, we fail to see a material difference between an interpretation that "Helps Maintain a Healthy Heart" means that a product will help a person be free of heart disease and an interpretation that "Helps Maintain a Healthy" heart means that a product will prevent heart disease—the interpretations are identical. Additionally, Bradach ignores his own express affirmation that he interpreted "help maintain my healthy heart" to mean "preventing heart disease." (*See* Markowitz Decl., Ex. 15 at 104:18-25 ("A [Bradach]: I believe – I believe that it would – it would help maintain my healthy heart . . . Q: . . . That, to you, means preventing heart disease, right? A: It does.").)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

Thus, Bradach's statements show that he adopted a preempted false-disease claim interpretation of "Helps Maintain a Healthy Heart."

Finally, Bradach asserts that "[w]hat Plaintiff's erroneous belief was about the eventual benefits that taking [Pharmavite's] supplement might provide—post-purchase—is irrelevant." (Reply at 8.) "The only thing that is relevant is that Plaintiff relied upon Defendant's false ['Helps Maintain a Healthy Heart'] structure/function claim in making his purchase." (*Id.*) Bradach is incorrect. As explained above, his interpretation of "Helps Maintain a Healthy Heart" determines whether his claims are preempted. His statements show his claims are preempted, and that he is not a member of the proposed class.

In sum, while Bradach has Article III standing to assert UCL and CLRA claims against Pharmavite, he only has standing to assert claims that are preempted. Bradach's individual claims are therefore invalid. Further, as the proposed class cannot assert preempted claims, Bradach is not a member of the proposed class. "In order to satisfy the typicality or adequacy requirements, Plaintiffs must be members of the class they seek to represent." *Williams v. Oberon Media, Inc.*, 2010 WL 8453723, at *6 (C.D. Cal. Apr. 19, 2010); *see also Estate of Felts v. Genworth Life Ins. Co.*, 250 F.R.D. 512, 524 (W.D. Wash. 2008) ("Class membership is a minimal prerequisite to a finding of typicality."). Thus, neither the typicality nor adequacy requirements are satisfied. Class certification is therefore unwarranted.

Even assuming that Bradach is a typical and adequate representative of the class, however, other issues—discussed below—would preclude class certification.

### C. Ascertainability

"The requirement of an ascertainable class is met as long as the class can be defined through objective criteria." *Guido v. L'Oreal, USA, Inc.*, 2013 WL 3353857, at *18 (C.D. Cal. July 1, 2013). "A class is sufficiently defined and ascertainable if it is administratively feasible for the court to determine whether a particular individual is a member." *Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 521 (C.D. Cal. 2012) (internal quotation marks omitted); *see also Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 593 (C.D. Cal. 2008) (reasoning that a proposed class was ascertainable where "the proposed class definition allows prospective plaintiffs to determine whether they are class members with a potential right to recover"). A class that includes members who were not harmed by a defendant's alleged wrongdoing is "both imprecise and overbroad" and does not satisfy the ascertainability requirement. *See Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *3 (C.D. Cal. Apr. 12, 2012).

As Pharmavite asserts, the proposed class is overbroad. The proposed class potentially includes members, such as Bradach, who have no non-preempted claims. There is no common or class-based way to determine whether a particular purchaser of Pharmavite's vitamin E supplements has non-

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

preempted claims. An individualized inquiry would be needed for such determination. Such inquiry would place a massive administrative burden on the courts that would nullify any benefits of a class action. The ascertainability requirement is not met. *See Tietsworth v. Sears Roebuck & Co.*, 2012 WL 1595112, at *14 (N.D. Cal. May 4, 2012) (concluding that the ascertainability requirement was not met where, "[b]ecause of the way that the classes are defined, it appears that 'ascertaining class membership would require unmanageable individualized inquiry'").

### D.     Commonality and Predominance

Commonality requires a plaintiff to demonstrate that "class members have suffered the same injury," by showing their claims "depend upon a common contention." *Dukes*, 564 U.S. at 349-50. "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* "[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). It focuses on the relationship between the common and individual issues, requiring that the common issues be qualitatively substantial in relation to the issues peculiar to individual class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). "The predominance inquiry under Rule 23(b)(3) is 'similar to,' but more demanding than, the commonality inquiry under Rule 23." *Steven Ades & Hart Woolery v. Omni Hotels Mgmt. Corp.*, 2014 WL 4627271, at *8 (C.D. Cal. Sept. 8, 2014). It "requires that plaintiff demonstrate common questions predominate as to each cause of action for which plaintiff seeks class certification." *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 579 (C.D. Cal. 2016). "In order to determine whether common issues predominate, the Court neither decides the merits of the parties' claims or defenses nor does it decide whether the plaintiffs are likely to prevail on their claims. Rather, the Court must determine whether plaintiffs have shown that there are plausible classwide methods of proof available to prove their claims." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 487 (N.D. Cal. 2011) (internal quotation marks omitted).

Whether a given consumer has non-preempted false structure/function claims will depend on how the consumer interpreted "Helps Maintain a Healthy Heart" when the consumer purchased the supplements. As Bradach has offered no evidence that consumers uniformly interpret the statement in a particular manner, he has failed to show that this interpretation question would be common to the class. To the contrary, an individualized inquiry into each consumer's interpretation of "Helps Maintain a Healthy Heart" would be required to determine whether each consumer has non-preempted claims. Such individualized inquiries would predominate over any other issues common to the class.

Moreover, an individualized inquiry into each consumer's interpretation of "Helps Maintain a Healthy Heart" would be required to determine the materiality of the statement. "While a named

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

plaintiff in a UCL class action [] must show that he or she suffered injury in fact and lost money or property as a result of the unfair competition, once the named plaintiff meets that burden, no further individualized proof of injury or causation is required to impose restitution liability against the defendant in favor of absent class members." *See In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 154 (2010). "[A] presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009). "Thus, so long as plaintiffs establish that defendants' omissions and misrepresentations are 'material,' they may bring a UCL claim on behalf of a class without individualized proof of reliance." *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475 (C.D. Cal. 2012). Unlike the UCL, "the CLRA requires a showing of actual injury as to each class member." *In re Steroid Hormone Prod. Cases*, 181 Cal App. 4th at 154. But, "a plaintiff may demonstrate that a defendant's alleged deceptive conduct caused . . . damage to the class by showing that the alleged misrepresentation would have been *material* to reasonable persons." *Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *15 (N.D. Cal. June 13, 2014) (internal quotation marks and citation omitted) (emphasis in the original). "If the trial court finds that material misrepresentations have been made to the entire class, an inference of reliance arises as to the class." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (2009). Thus, both the UCL and CLRA "allow plaintiffs to establish materiality and reliance (i.e., causation and injury) by showing that a reasonable person would have considered the defendant's representation material." *In re NJoy Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1103 (C.D. Cal. 2015).

"A misrepresentation is judged to be material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re Tobacco II Cases*, 46 Cal. 4th at 327 (internal quotation marks omitted). "Materiality of the misrepresentation is an objective standard that is susceptible to common proof." *Wolph*, 272 F.R.D. at 488. Though materiality is an objective inquiry, this does not "suggest that predominance would be shown in every California UCL case." *See Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013). "If the misrepresentation or omission is not material as to all class members, the issue of reliance 'would vary from consumer to consumer' and the class should not be certified." *Id.* at 1022-23; *see also In re Vioxx Class Cases*, 180 Cal. App. 4th at 129 ("[I]f the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action.").

While Bradach asserts that "Helps Maintain a Healthy Heart" is material to consumers, he offers no evidence on how consumers interpret this statement. Instead, Bradach merely proclaims that "[t]he law does not require Plaintiffs to prove *how* a reasonable consumer would interpret the meaning of 'helps maintain a healthy heart,'" but only that "the representation is material to the reasonable consumer." (Reply at 10.) Bradach's focus is misplaced. If individualized questions exist regarding how consumers interpret "Helps Maintain a Healthy Heart," then whether a consumer considered the statement material would also be an individualized inquiry. In other words, with no evidence that consumers in the class interpret "Helps Maintain a Healthy Heart" in a uniform way, the question of

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

*what* interpretation consumers find material will vary from consumer to consumer notwithstanding whether the consumers actually find a given interpretation material. *See Jones*, 2014 WL 2702726, at *14 ("Here, there is a lack of cohesion among the class members . . . because 'even if the challenged statements were *facially* uniform, consumers' *understanding* of those representations would not be.'" (emphasis in the original)). The individual questions of consumers' interpretation of "Helps Maintain a Healthy Heart" would predominate in the litigation, as the Parties would need to examine every consumer individually to ultimately determine how each consumer interpreted the statement. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013) (concluding that materiality issues did not predominate where plaintiffs failed "to sufficiently show that 'All Natural' has any kind of uniform definition among class members"); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 576-77 (C.D. Cal. 2014) ("*ConAgra I*") (concluding that the predominance requirement was not met where, among other things, plaintiffs failed to offer evidence linking "consumers' understanding of '100% Natural' to the specific issue raised in this case—i.e., whether consumers believe the label means the product contains no genetically modified organisms or GMO ingredients"); *Thurston v. Bear Naked, Inc.*, 2013 WL 5664985, at *8 (S.D. Cal. July 30, 2013) (reasoning that the predominance requirement was not met for a particular class because the plaintiffs failed to, among other things, "sufficiently show that 'natural' has any kind of uniform definition among class members"); *cf. In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1019 (C.D. Cal. 2015) ("*ConAgra II*") (concluding that the predominance requirement was satisfied where "plaintiffs [] made a sufficient showing for purposes of class certification that the '100% Natural' claim is material and that consumers generally understand it, inter alia, as a representation that Wesson Oils do not contain GMOs").

Thus, individualized issues will predominate over any issues common to the class.[3] The predominance requirement is therefore not met.

    **E.**     **Superiority**

The superiority inquiry under Rule 23(b)(3) turns on the question of whether "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In determining superiority, courts must consider the four factors of Rule 23(b)(3). *Zinser*, 253 F.3d at 1190. They are: (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

---

    [3] Other predominance problems may also exist such as Bradach's failure to provide a damages model attributable to his theory of liability.

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3218-GHK (AGRx) | Date | July 6, 2016 |
|---|---|---|---|
| Title | *Noah Bradach, et al. v. Pharmavite LLC* | | |

As explained in the "Ascertainability" section, (*see supra* Section III.C), the proposed class would be extremely difficult to manage. There is no common way to determine if class members have non-preempted structure/function claims against Pharmavite without having each member testify as to his or her interpretation of "Helps Maintain a Healthy Heart" at the time of purchase. As obtaining such testimony would be costly, time-consuming, burdensome, and would defeat the very purpose of classwide litigation, it does not satisfy the superiority requirement.

**IV.     Conclusion**

For the foregoing reasons, Plaintiffs' Renewed Motion for Class Certification is **DENIED**.

Additionally, Bradach appears to have asserted only preempted false disease claims. He is hereby **ORDERED to SHOW CAUSE** in writing, within **14 days hereof**, why his claims should not be dismissed as preempted.

**IT IS SO ORDERED.**

|  | -- | : | -- |
|---|---|---|---|
| | Initials of Deputy Clerk | | Bea |