**FILED**

**NOT FOR PUBLICATION**

MAY 17 2018

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NOAH BRADACH, On Behalf of Himself and All Others Similarly Situated,<br><br>          Plaintiff-Appellant,<br><br>   v.<br><br>PHARMAVITE, LLC,<br><br>          Defendant-Appellee. | No.   16-56598<br>         17-55064<br><br>D.C. No.<br>2:14-cv-03218-GHK-AGR<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
George H. King, District Judge, Presiding

Argued and Submitted April 10, 2018
Pasadena, California

Before: BEA and MURGUIA, Circuit Judges, and KEELEY,[**] District Judge.

Noah Bradach appeals from the district court's dismissal of his class action complaint against Defendant-Appellee Pharmavite LLC. Bradach alleges he and other consumers purchased Pharmavite's Nature Made Vitamin E dietary

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Irene M. Keeley, United States District Judge for the Northern District of West Virginia, sitting by designation.

supplements in reliance of the statement "Helps Maintain a Healthy Heart," ("Heart Health statement") which appears on the product's label. Bradach filed a class action lawsuit against Pharmavite contending the statement is false and misleading and asserting Pharmavite's use of the statement violates California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*.

Dietary supplement labeling is primarily governed by federal law. *See Gallagher v. Bayer AG*, No. 14-cv-04601-WHO, 2015 WL 1056480, at *3–7 (N.D. Cal. Mar. 10, 2015). Under federal law, dietary supplement manufacturers' statements on product labels fall into one of two categories. The first is "structure/function" claims, which allow manufacturers to display truthful, non-misleading statements about the benefits the dietary supplement provides. *See Gallagher*, 2015 WL 1056480 at *6; *see also* 21 C.F.R. § 101.93(f). Structure/function claims do not require pre-approval from the Food and Drug Administration ("FDA") so long as the "manufacturer has substantiation that the statements are truthful and not misleading, provides a disclaimer that the statement has not been approved by the FDA, and notifies the FDA of its use of the statement no later than 30 days after its first use." *Gallagher*, 2015 WL 1056480 at *4 n.2 (citing 21 U.S.C. § 343(r)(6)). The second type of permissible statements are disease claims, which are defined as statements that a product can diagnose,

mitigate, treat, cure, or prevent a specific disease or class of diseases. *See Gallagher*, 2015 WL 1056480 at *4; *see also* 21 C.F.R. § 101.93(g). Disease claims require FDA pre-approval. *See Gallagher*, 2015 WL 1056480 at *4 n.3 (citing 21 U.S.C. § 343(r)(3)).

Federal law can preempt state laws that impose different requirements from those dictated by federal statutes and regulations. The Food, Drug, and Cosmetic Act ("FDCA"), as amended by the Nutrition Labeling and Education Act ("NLEA"), contains an express preemption provision. *Gallagher*, 2015 WL 1056480, at *4 (citing 21 U.S.C. § 343-1(a)(5)). Section 343-1(a)(5) makes clear that states are prohibited from legislating food labeling laws that are not identical to federal requirements under 21 U.S.C. § 343(r), including § 343(r)(6). 21 U.S.C. § 343-1(a)(5). As *Gallagher* explained, "preemption only occurs where application of state laws would impose more or inconsistent burdens on manufacturers than the burdens imposed by the FDCA." *Gallagher*, 2015 WL 1056480, at *4.

The parties do not dispute that, on its face, the Heart Health statement is a structure/function claim. Federal law does not preempt state requirements that statements on dietary supplement labels that are structure/function claims and speak about maintaining heart health be accurate and not misleading. *See Gallagher*, 2015 WL 1056480 at *6–7 (citing to 65 Fed. Reg. 1000). However, federal law does preempt state regulation of statements on dietary supplement

labels that are disease claims and speak about preventing heart disease when those regulations impose requirements that differ from the requirements of the FDCA. *See Gallagher*, 2015 WL 1056480 at *6–7.

Here, the district court determined that Bradach lacked standing to assert his claims under the CLRA and UCL because the district court concluded that Bradach's deposition testimony and an interrogatory response indicated that Bradach believed the Heart Health statement was a disease claim and that Bradach's state-law claims were therefore preempted by the FDCA. In turn, the district court determined that Bradach could not serve as the class representative, declined to certify a class, and dismissed the case. After the case was dismissed, the district court awarded Pharmavite $84,862 in costs for a consumer survey Pharmavite commissioned. Bradach appeals both the dismissal of his lawsuit and the district court's subsequent grant of Pharmavite's motion to recover costs.

We have jurisdiction under 28 U.S.C. § 1291. For the reasons discussed below, we reverse the district court on both issues and remand for further proceedings.

1. We review questions of preemption and standing de novo. *See Gingery v. City of Glendale*, 831 F.3d 1222, 1226 (9th Cir. 2016) (citation omitted); *see also Galvez v. Kuhn*, 933 F.2d 773, 776 (9th Cir. 1991).

The record does not support the proposition that Bradach's individual claims

are *solely* premised on preempted disease claims. Bradach's testimony reflects that he had a mixed understanding of what Pharmavite's Vitamin E supplement would do. Bradach understood the Vitamin E product to both *maintain* his heart health and *prevent* heart disease. Courts have recognized that a plaintiff may have claims based on mixed motives and have allowed claims arising in part from non-preempted motives to move forward. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 799–800 (9th Cir. 1987); *Ikekwere v. Southwall Techs., Inc.*, No. C-04-00027-JF(PVT), 2005 WL 1683623, at *2–3 (N.D. Cal. 2005). Accordingly, Bradach's claims were not preempted.

Additionally, Bradach has standing to sue Pharmavite because he suffered an injury by buying the supplement when, he contends, he would otherwise not have purchased it had he known the truth about the Heart Health statement, his injury is traceable to the Heart Health statement, and his injury is a redressable through restitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Further, Bradach has standing to sue under California law because California law "demands no more than the corresponding requirement under Article III" for CLRA and UCL claims. *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). Therefore, to the extent the district court dismissed Bradach's claims because it found that he lacked standing, that dismissal was error.

2. The district court declined to certify a class because it determined that

5

Bradach was not a member of the proposed class. We review a district court's class certification ruling for abuse of discretion. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015).

The district court rested its denial of class certification on two primary grounds. First, the district court held that, because Bradach's claims were preempted, he was not a member of the proposed class and, thus, he failed the typicality requirement of Federal Rule of Civil Procedure 23. As discussed above, the district court erred when it determined that Bradach's claims were preempted, so this holding was erroneous.

Second, the district court held that the proposed classes failed the ascertainability, commonality, predominance, and superiority elements of Rule 23 because it would be very difficult to determine whether the putative class members viewed the Heart Health statement as a disease claim or a structure/function claim. This determination was based on an error of law and was a per se abuse of discretion. *See United States v. Hinkson*, 585 F.3d 1247, 1260 (9th Cir. 2009) (en banc). Under California law, class members in CLRA and UCL actions are not required to prove their individual reliance on the allegedly misleading statements. Instead, the standard in actions under both the CLRA and UCL is whether "members of the public are likely to be deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002), *as modified* (May 22, 2002); *see also In re Tobacco II Cases*, 46

Cal. 4th 298, 312 (2009). For this reason, courts have explained that CLRA and UCL claims are "ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. Dec. 20, 2012) (internal quotation marks omitted). Thus, the district court's conclusion that it would need to inquire into the motives of each individual class member was premised on an error of law.

Accordingly, we remand to the district court for it to reconsider the class allegations.

3. Finally, Bradach appeals the district court's grant of Pharmavite's motion seeking to recover $84,862 for expenses Pharmavite incurred in conducting a consumer survey for its expert report. We review the district court's award of costs and ruling regarding local rules for abuse of discretion. *Kalitta Air L.L.C. v Central Texas Airborne Sys. Inc.*, 741 F.3d 955, 957 (9th Cir. 2013). We review de novo whether the district court had the authority to award costs. *Id.*

Although district courts have discretion under Fed. R. Civ. P. 54(d) "to *refuse* to tax costs in favor of a prevailing party, a district court may not rely on its 'equity power' to tax costs beyond those expressly authorized by [28 U.S.C.] section 1920." *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989), *abrogated on other grounds by Townsend v. Holman Consulting Corp.*, 929 F.2d

7

1358 (9th Cir. 1990), *amended by* 929 F.2d 1658 (9th Cir. 1990) (emphasis in original). The text of § 1920(4) is narrow, which "suggest[s] that fees are *permitted only for the physical preparation and duplication of documents*, *not the intellectual effort involved in their production.*" *Id.* (emphasis added).

Here, the district court relied on the language of the Central District of California's Local Rule 54-3.12 and its inherent discretion in making its decision, and did not consider whether § 1920 permitted it to award the requested costs. A district court's authority to award costs is circumscribed by § 1920. *Id.* Pharmavite seeks to recover the costs of conducting a consumer survey—which is akin to the intellectual effort of producing the survey, not merely the physical preparation and duplication of documents. This is not the type of cost § 1920(4) contemplates. *Id.* Accordingly, the district court erred in granting Pharmavite's motion seeking to recover the costs of producing the consumer survey.

**REVERSED AND REMANDED.**